CLOSED

<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ALLEN BOYLE and MICHAEL : 
LUONGO, :     **Civil Action No. 11-3202 (SRC)**
:
                 Plaintiffs, :           **OPINION**
:
        v. :
:
INTERNATIONAL BROTHERHOOD OF :
TEAMSTERS LOCAL 863 WELFARE :
FUND, et al., :
:
             Defendants. :

<u>**CHESLER**</u>, District Judge

This matter comes before the Court upon the motion by Plaintiffs Allen Boyle ("Boyle")

and Michael Luongo ("Luongo" or "Plaintiff") (collectively "Plaintiffs") for class certification

and for summary judgment [docket entry #33]. Defendants International Brotherhood of

Teamsters Local 863 Welfare Fund ("Fund"), Administrator(s) International Brotherhood of

Teamsters Local 863 Welfare Fund, Alphonse Rispoli, Bruce Vivadelli, Louis Sanchez, Dewey

Canella, John O'Riordan, and David Markowitz (collectively "Defendants") have opposed the

motion and cross-moved for summary judgment [docket entry #40]. The Court has considered

the parties' submissions and, pursuant to Federal Rule of Civil Procedure 78, opted to rule

without oral argument. For the reasons discussed below, the Court will grant Defendants' cross-

motion for summary judgment and deny Plaintiffs' motions for class certification, summary

judgment, and attorneys' fees.

## I.   FACTUAL BACKGROUND

This case arises out of the temporary termination of health benefits to former employees of C&S Whole Grocers and its subsidiary Woodbridge Logistics LLP (collectively "C&S/Woodbridge").  Plaintiffs Boyle and Luongo are among a group of 67 individuals ("Early Retirees") who, after thirty or more years of service to C&S/Woodbridge, opted for early retirement pursuant to a collective bargaining agreement ("CBA") between C&S/Woodbridge and the International Brotherhood of Teamsters Local 863 ("Local 863").  Under the terms of the CBA, these long-tenured employees had a buy-out option that allowed them to continue to receive family medical coverage from the Fund for either five years or eight years, depending on certain qualifications.  Under the terms of the CBA, C&S/Woodbridge would continue to make payments to the Fund to cover the medical benefits for the Early Retirees.  Once C&S/Woodbridge paid, the Fund would provide the Early Retirees with health benefits.

In February 2011, the governing CBA between C&S/Woodbridge and Local 863 expired, and C&S/Woodbridge closed its distribution centers in New Jersey, laying off approximately 1,500 active employees.  At about the same time, C&S/Woodbridge ceased making contributions to the Fund on behalf of both its active and retired employees, including the Early Retirees.  The Fund insisted that C&S/Woodbridge had a continuing obligation to make contributions for the Early Retirees, and an arbitration was scheduled, and then adjourned, for March 2011. C&S/Woodbridge restarted payments in March, but the Fund did not restore the Early Retirees' benefits until June 13, 2011.  At that time, the Fund restored the Early Retirees' benefits retroactively to the date of their original termination.  The Fund later offered to reimburse with interest the cost of any alternative insurance policies or uncovered medical expenses the Early

2

Retirees incurred during the gap period.

The crux of the dispute between the parties is whether the Fund and its administrators breached their ERISA mandated fiduciary duties during the roughly 18-week period that the Fund was receiving payments from C&S/Woodbridge but not providing benefits to the Early Retirees. Plaintiffs argue that the Fund refused to restore the Early Retirees' benefits for no reason other than to do so would have required "a lot of work." The Fund argues that its delay in restarting coverage was merely the result of good-faith efforts to ascertain what payments were being made, for what periods, and for whose benefit during the "fog" created by C&S/Woodbridge's shutdown and initial cessation of contributions.

On or about June 3, 2011, Boyle filed suit in this Court on behalf of himself and those similarly situated. Luongo was added as a plaintiff by way of an Amended Complaint on or about November 29, 2011. Plaintiffs allege that Defendants violated ERISA by unlawfully denying health benefits and breaching their fiduciary duties. The Amended Complaint seeks a number of remedies, including reinstatement of medical benefits, repayment of medical premiums, reimbursement of medical expenses, liquidated damages, compensation for unjust enrichment, interest, attorney's fees, and costs.

## II.  DISCUSSION

### A.    Jurisdiction

Defendants argue that the Court has no jurisdiction over this case because Plaintiffs lack standing to bring suit and therefore no "case or controversy" exists within the meaning of Article III of the Constitution. See U.S. Const. art. III, § 2. Since this Court may not rule on the merits

of a case over which it has no jurisdiction, Defendants' argument that Plaintiffs lack standing must be the Court's first concern.

To establish Article III standing, a plaintiff must demonstrate that "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servcs. (TOC), Inc., 528 U.S. 167, 180-81 (2000). "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 40 (quoting Warth v. Seldin, 422 U.S. 490, 502 (1975)).

While couched in the language of standing, Defendants' argument is probably better viewed as invoking the closely related mootness doctrine.  "[T]he doctrine of standing is distinguishable from that of mootness."  Pederson v. Louisiana State Univ., 213 F.3d 858, 869 (5th Cir. 2000).  Standing refers to whether a plaintiff is qualified to bring suit as an initial matter.  See Anjelino v. New York Times Co., 200 F.3d 73, 88 (3d Cir. 1999) (stating that "[a] plaintiff's standing is established at the pleading stage. . . .").  Mootness, on the other hand, refers to situations in which a controversy that was justiciable at the pleading stage has ceased to exist because of changed circumstances.  See United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980) ("The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).")  "[T]he central

4

question of all mootness problems is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." Jersey Central Power and Light Co. v. State of New Jersey, 772 F.2d 35, 39 (3d Cir. 1985) (quoting International Brotherhood of Boilermakers, etc. v. Kelly, 815 F.2d 912, 915 (3d Cir. 1987)).

Generally, "any time that the parties to a case come to 'lack a legally cognizable interest in its outcome,' the case is deemed moot and must be dismissed for lack of jurisdiction." Shalhoub v. AG of the United States, 473 Fed. Appx. 114, 116 (3d Cir. 2012) (quoting Murphy v. Hunt, 455 U.S. 478, 481, 484 (1982)). While the post-class certification mooting of a named plaintiff's claim will not strip a federal court of jurisdiction over live class claims, Franks v. Bowman Transp. Co., 424 U.S. 747, 755-757 (1976), a case in which the named plaintiff's claim has been mooted before class certification will generally be dismissed for lack of jurisdiction, Board of Sch. Comm'rs v. Jacobs, 420 U.S. 128, 129 (1975); Lusardi v. Xerox Corp., 975 F.2d 964, 974 (3d Cir. 1992).

Defendants argue that both Boyle Luongo and have already been made whole by subsequent payment and/or offers to reimburse. According to Defendants, Boyle purchased COBRA insurance after the Fund notified the Early Retirees that their benefits were being terminated, so he suffered no loss in coverage, and he has since been reimbursed with interest for his out-of-pocket COBRA expenses. Defendants also argue that Boyle was not hindered in seeking medical attention during this time, and Plaintiffs point to no evidence to the contrary. Similarly, Luongo successfully joined his wife's plan, which covered all of his medical and prescription drug needs. The Fund asserts that Luongo has declined the Fund's repeated offers to reimburse him for any out-of-pocket expenses he incurred in switching to his wife's policy.

Defendants are correct that Boyle's full and unreserved acceptance of payment has mooted his claim against the Fund.[1]  However, the Court retains jurisdiction over this case, because only one plaintiff must have standing to confer jurisdiction, <u>Massachusetts v. EPA</u>, 549 U.S. 497, 518 (2007), and there is still a live controversy as to Luongo.  Unlike Boyle, Luongo has not accepted the Fund's repeated offers to reimburse him for the costs associated with obtaining alternative insurance during the gap period.  Defendants argue that, regardless of Luongo's refusal, the Fund's *offer* of reimbursement is sufficient by itself to moot Luongo's claims.  But in <u>Weiss v. Regal Collections</u>, the Third Circuit made clear that a plaintiff's refusal of a defendant's unilateral settlement offer does not moot a plaintiff's claim, even where the offer was made prior to a motion for class certification and the amount offered would satisfy the entire claim.  385 F.3d 337, 349 (3d Cir. 2004).

In short, there is still a justiciable controversy between Luongo and the Defendants within the meaning of Article III.  Accordingly, the Court will consider the merits of the parties' respective motions.

### B.    Class Certification

Plaintiff has moved to certify a class consisting of the 67 Early Retirees who were deprived of benefits from February 2011 to June 2011.  In order to obtain class certification, a plaintiff must demonstrate that the putative classes meets the threshold requirements of Rule 23(a) as well as one of the three Rule 23(b) categories under which they wish to proceed as a

---

[1] Plaintiffs' reliance on <u>Horvath v. Keystone Health Plan East</u>, Inc., 333 F.3d 450 (3rd Cir. 2003), is misplaced. There, the Third Circuit held that a plaintiff seeking a prospective injunction to require a defendant to meet its fiduciary disclosure obligations under ERISA need not establish actual harm.  <u>See id.</u> at 465.  As discussed *infra*, the Complaint in the case at bar does not seek such an injunction.

class.  In re Prudential Ins. Co. of Am. Sales Practices Litig. Agent Actions, 148 F.3d 283,

308-09 (3d Cir. 1998).  A movant for class certification has the burden of proving that all

requirements of Rule 23 are met.  General Telephone Co. of the Sw. v. Falcon, 457 U.S. 147, 161

(1982).  The Third Circuit recently reiterated the well-established standard for class certification:

> Every putative class must satisfy the four requirements of Rule 23(a):
> (1) the class must be "so numerous that joinder of all members is
> impracticable" (numerosity); there must be "questions of law or fact
> common to the class" (commonality); "the claims or defenses of the
> representative parties" must be "typical of the claims or defenses of
> the class" (typicality); and (4) the named plaintiffs must "fairly and
> adequately protect the interests of the class" (adequacy of
> representation, or simply adequacy).  Fed. R. Civ. P. 23(a)(1)-(4).  If
> those requirements are met, a district court must then find that the
> class fits within one of the three categories of class actions in Rule
> 23(b).

Drennan v. PNC Bank, NA (In re Comty. Bank of N. Va. & Guaranty Nat'l Bank of Tallahassee

Second Mortg. Loan Litig.), 622 F.3d 275, 278 (3d Cir. 2010).

In this case, Plaintiff has sought certification of a class under Rule 23(b)(2), which

provides that a class may be maintained when "the party opposing the class has acted or refused

to act on grounds that apply generally to the class, so that final injunctive relief or corresponding

declaratory relief is appropriate respecting the class as a whole."  Defendants argue that Plaintiff

has not met Rule 23(a)'s typicality, commonality, and adequacy requirements and that Plaintiff

has failed to request either injunctive or declaratory relief, as required by Rule 23(b)(2).  Because

the Court is persuaded that Plaintiff does not properly seek either declaratory or injunctive relief,

it is not necessary to consider whether Plaintiff has satisfied the requirements of Rule 23(a).

Plaintiff's Amended Complaint includes two separate ERISA counts, one for the denial

of benefits and one for breach of fiduciary duty.  In neither count does Plaintiff pray for either

7

injunctive or declaratory relief, as expressly required by Rule 23(b)(2).  Instead, the Amended

Complaint seeks the reinstatement of medical benefits and various forms of monetary relief.  As

discussed above, the medical benefits have been restored for all members of the putative class,

leaving only Plaintiff's claims for money damages.  Claims for monetary relief may not be

certified under Rule 23(b)(2) at least where they are not incidental to injunctive or declaratory

relief.  Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2557 (2011).

Plaintiff has repeatedly described the relief he seeks as "equitable" in nature.  But the

Supreme Court has made clear that, for the purposes of Rule 23(b)(2), the distinction between

law and equity is "irrelevant."  See id. at 2560.  "The Rule does not speak of 'equitable' remedies

generally but of *injunctions* and *declaratory judgments*."  Id.  (emphasis added).  Plaintiff's reply

brief now recasts the relief requested as injunctive and/or declaratory.  See Pl.'s Reply Br. at 5 (".

. . . Plaintiffs seek a declaration that Defendants breached their fiduciary duty and an injunction

ordering Defendants to extend the Early Retirees' benefits beyond their normal termination

date.").  But these remedies are entirely absent from the Complaint, and it is axiomatic that a

plaintiff may not amend his complaint through later briefing, Frederico v. Home Depot, 507 F.3d

188, 201-02 (3d Cir. 2007).

It is also worth noting that even if this Court were to credit Plaintiff's untimely effort to

amend the Complaint, Plaintiff's claims for monetary relief would still fail under Dukes.  There,

the Supreme Court shut the door on Rule 23(b)(2) claims for monetary relief, "at least where . . .

. the monetary relief is not incidental to the injunctive or declaratory relief."  Dukes, 131 S. Ct. at

2557.  "Incidental damages are those that flow directly from liability to the class as a whole on

the claims forming the basis of the injunctive or declaratory relief."  Barabin v. Aramark Corp.,

No. 02-8057, 2003 U.S. App. LEXIS 3532, *5-6 (3d Cir. 2003) (citing Allison v. Citgo Petroleum Corp., 151 F.3d 402, 415 (5th Cir. 1998)).  Plaintiff's monetary claims would not flow directly or automatically to the class as a whole from either the Court's "declaration" that Defendants violated their fiduciary duties under ERISA or an injunction ordering an 18-week extension of the Early Retirees' medical benefits.  As such, Plaintiff's claims for monetary relief are not incidental to a proper 23(b)(2) claim for injunctive or declaratory relief and therefore cannot be certified.  See Dukes, 131 S. Ct. at 2560.

    **C.**    **Cross-Motions for Summary Judgment**

Having already determined that Boyle's claims are moot, the Court must next consider the parties' cross-motions for summary judgment only as to Luongo's claims.  Luongo has moved for summary judgment, arguing that there is no genuine dispute as to any material fact concerning whether Defendants breached their fiduciary duties under ERISA.  Defendants have cross-moved for summary judgment as to both counts contained in the Complaint.  With respect to Count I ("Denial of Benefits"), Defendants argue that, coverage having been restored, Plaintiff has already received all of the damages permitted under Section 502(a)(1) of ERISA.[2]  With respect to Count II ("Breach of Fiduciary Duty"), Defendants argue both that they fully satisfied their fiduciary duties and that, even if they had not, the remedies Plaintiff seeks are prohibited as a matter of law.

*I. Summary Judgment Standard of Review*

---

[2] Plaintiff has opposed Defendants' motion as to Count II but has offered no opposition to summary judgment as to Count I.  The Court therefore regards Plaintiff's claim for denial of benefits as having been abandoned and will grant summary judgment in favor of Defendants as to Count I.

The standard upon which a court must evaluate a summary judgment motion is well-established.  Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000).  In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party.  See Boyle v. County of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998).  The moving party bears the burden of establishing that no genuine issue of material fact remains.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial.  Anderson, 477 U.S. at 248; see also Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist).  "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment."  Schoch v. First Fid. Bancorporation, 912

F.2d 654, 657 (3d Cir. 1990).  "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."  Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).  If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

### ii. Count II: Breach of Fiduciary Duty

ERISA expressly defines who qualifies as a fiduciary and the scope of their duties.  Most importantly for present purposes, "a person is a fiduciary with respect to a plan to the extent he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . . or he has any discretionary authority or discretionary responsibility in the administration of such plan."  29 U.S.C. § 1002(21)(A).

ERISA fiduciaries are held to the "prudent man standard of care."  29 U.S.C. § 1104(a).  This means that a fiduciary must discharge his duties solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan.  29 U.S.C. § 1104(a)(1)(A).  An ERISA fiduciary must also discharge his duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a

11

like capacity and familiar with such matters would use in the conduct of an enterprise of a like

character and with like aims."  29 U.S.C. § 1104(a)(1)(B).

Defendants do not contest that they are ERISA fiduciaries.  Therefore, the principal

question remaining before the Court on the parties' cross motions is whether, construing all facts

and inferences in the light most favorable to the nonmoving party, Defendants breached their

fiduciary duties under Section 404(a)(1) of ERISA.  Plaintiff argues that Defendants breached

their duties by failing to provide him with health coverage after C&S/Woodbridge recommended

payments for the Early Retirees and by failing to provide him with accurate information as to the

status of his health benefits during that period.

To the extent that Plaintiff's claim for breach of fiduciary duty is predicated on

Defendants' alleged failure to provide accurate information, it fails.  First, Count II of the

Amended Complaint, rests Plaintiff's claim for breach of fiduciary duty exclusively on the

Fund's failure to provide benefits during the time it was receiving contributions from

C&S/Woodbridge.  See Am. Compl. at p. 10 ("Defendants breached the fiduciary duty under

ERISA by failing to use the contributions made by C&S/Woodbridge to provide Plaintiffs and

other Early Retirees with medical benefits.").  As already discussed, a plaintiff may not amend

his complaint through later briefing. Frederico, supra, 507 F.3d at 201-02.  However, elsewhere

in the Amended Complaint, Plaintiff does allege that the Fund "lied to the Earl Retirees."  Am.

Compl. at p. 5.  Assuming that the factual allegations appearing elsewhere in the Amended

Complaint do suffice to make out a claim for breach of fiduciary duty based on the provision of

materially misleading information, Luongo's claim still fails.

"To allege and prove a breach of fiduciary duty for misrepresentations, a plaintiff must establish each of the following elements: (1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation." Burstein v. Ret. Account Plan for Emples. of Allegheny Health Educ. & Research Found., 334 F.3d 365, 384 (3d Cir. 2003) (citing Daniels v. Thomas & Betts Corp., 263 F.3d 66, 73 (3d Cir. 2001)). Plaintiffs submitted a number of certifications from the Early Retirees, some of which indicate that individual retirees were falsely led to believe that C&S/Woodbridge was not making contributions to the Fund. But Luongo's claim based on the Fund's failure to provide accurate information must stand or fall on its own. Luongo has made an insufficient showing that he was at any time denied access to information, was personally provided misleading information about his health plan, or that he detrimentally relied on any such misrepresentation. Luongo has only submitted a form affidavit stating that he spoke with representatives of the Fund and was told that his medical coverage was no longer free because "the company closed it[s] doors." This, without more, is insufficient to support a claim for breach of fiduciary duty based on the failure to provide accurate information. Moreover, in his deposition, Luongo stated that he never called the Fund about his health benefits.

The Court next considers whether Defendants breached their fiduciary duties by failing to provide Plaintiff with health benefits. After the brief discontinuation of payments to the Fund in February 2011, C&S/Woodbridge restarted payments on behalf of the Early Retirees on March 1, 2011, and continued to make regular payments during the roughly three and a half months that the Early Retirees were without benefits. Defendants have argued that their delay in restarting

13

the Early Retirees' health benefits represents a logical Fund administration decision based on the need to establish with certainty that C&S/Woodbridge was paying, and would continue to pay, for the Early Retirees' health benefits and was fully consistent with their fiduciary duties.

The crux of the issue is whether, under the circumstances then prevailing, Defendants acted with the care, skill, prudence, and diligence that "a prudent man acting in a like capacity and familiar with such matters would use," 29 U.S.C. § 1104(a)(1)(B), during the time Luongo was without benefits.  Luongo has failed to submit evidence sufficient to withstand Defendants' cross-motion for summary judgment on this issue.

Luongo relies primarily on the record of C&S/Woodbridge's payments to the fund beginning in March 1, 2011, and continuing throughout the duration of the contested period.  For instance, the record shows that C&S/Woodbridge wrote the Fund a check for $330,590 dated March 1, 2011, $37,520 of which was ultimately determined to have been allocated for the provision of health benefits to the Early Retirees for the period between February 6 and February 19, 2011.  Before the Fund retroactively resumed coverage on June 13, 2011, C&S/Woodbridge also wrote checks for the amounts of $404,340 (March 10), $75,040 (April 7), $75,040 (May 4), and $93,800 (June 3), portions of which were intended by C&S/Woodbridge to cover health benefits for the Early Retirees.  Plaintiff asserts that Defendants have sought to justify the lapse in coverage only by saying that resuming coverage would have entailed a substantial amount of work.

Failing to provide ERISA-covered health benefits for no reason other than the amount of work involved may, as a matter of law, rise to the level of a fiduciary breach, but those are not the circumstances in this case.  Defendants have pointed to ample record evidence supporting the

view that the shutdown of the warehouses, the initial cessation of payments, and the late and/or ambiguous paperwork submitted by C&S/Woodbridge created real uncertainty as to whether, when, and to what extent the Fund could resume coverage for the Early Retirees.

The CBA in effect at the time of the shutdown expressly provided that "[i]f any employee qualified to participate in the benefits provided for and purchased by the Welfare Fund shall cease to qualify due to lack of Employer contributions . . . . his and his dependents' rights to share in any benefits purchased and provided for by the Welfare Fund shall forthwith cease and terminate." (Rispoli Decl., Ex A at p. 21) This and other related provisions of the CBA were incorporated into the Fund's Plan Trust Agreement.  Even Plaintiff does not appear to contest that the Fund followed proper procedures in advising the Early Retirees that their benefits were being terminated after C&S/Woodbridge initially ceased making payments – Plaintiff merely insists that Defendants breached their fiduciary duties by failing to promptly reinitiate coverage after C&S/Woodbridge resumed payments.  But, as Defendants have shown, C&S/Woodbridge's post-shutdown payments were not in the regular form and intervals the Fund was accustomed to. Prior to the closing, C&S/Woodbridge used standardized remittance forms provided by the Fund to make the appropriate level of contributions for all current and former employees eligible to receive Fund benefits.  After the shutdown, the timing and supporting documentation for C&S/Woodbridge's contributions to the Fund departed markedly from prior procedure. According to the testimony of Fund Manager Kathryn Zizza, the forms submitted by C&S/Woodbridge were badly organized, sent at irregular intervals, and were often unaccompanied by the payments they purported to describe.  Under the prevailing circumstances, the Court does not regard Defendants' delay in resuming coverage as inconsistent with ERISA's

15

prudent man standard.  Accordingly, Plaintiff's motion for summary judgment on his claim for

breach of fiduciary duty will be denied, and Defendants' cross-motion for summary judgment

will be granted.[3]

      **D.**      **Plaintiff's Motion for Attorneys' Fees**

The Court next considers Plaintiff's motion for the award of attorneys' fees.  A court's

"basic point of reference when considering the award of attorney's fees is the bedrock principle

known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a

statute or contract provides otherwise." Hardt v. Reliance Std. Life Ins. Co., 130 S. Ct. 2149,

2156-2157 (2010) (citing Ruckelshaus v. Sierra Club, 463 U.S. 680, 694 (1983)) (internal

quotations omitted).  ERISA does contain an express statutory departure from the American

Rule.  See 29 U.S.C. § 1132(g)(1) ("In any action . . . . by a participant, beneficiary, or fiduciary,

the court in its discretion may allow a reasonable attorney's fee and costs of action to either

party.").  In Hardt, the Supreme Court spelled out the standard governing awards of attorneys'

fees under ERISA:

> [A] fees claimant must show some degree of success on the merits
> before a court may award attorney's fees under § 1132(g)(1).  A
> claimant does not satisfy that requirement by achieving trivial success
> on the merits or a purely procedural victory, but does satisfy it if the
> court can fairly call the outcome of the litigation some success on the
> merits without conducting a lengthy inquiry into the question whether
> a particular party's success was substantial or occurred on a central
> issue.

130 S. Ct. at 2158 (internal quotes and citations omitted).

---

[3] Having determined that Defendants are entitled to summary judgment on the issue of
Defendants' liability for fiduciary breach, the Court finds it unnecessary to resolve the parties'
dispute over what remedies are available for such a claim.

Plaintiff's instant motions for class certification and/or summary judgment have been denied.  Plaintiff, however, argues that Counsel has achieved "some success on the merits" even in light of the Court's unfavorable decision today.  Plaintiff's argument rests on the Defendants' voluntary restoration of coverage and offers of reimbursement for the Early Retirees after Plaintiff's counsel filed suit in June 2011.  According to Plaintiff, the pressure generated by the lawsuit was the reason the Fund restored coverage in June 2011 and offered to reimburse the Early Retirees' out-of-pocket medical expenses in October 2011.

Plaintiff's argument has been described as the "catalyst theory" of fee shifting.  Under the catalyst theory, a plaintiff's counsel may be awarded fees on the basis of voluntary action taken by the defendant if "the pressure of the lawsuit was a material contributing factor in bringing about [the] extrajudicial relief."  Wheeler v. Towanda Area School Dist., 950 F.2d 128, 132 (3d Cir. 1991).  In Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 605 (2001), the Supreme Court cast doubt on the catalyst theory when it held that a defendant's voluntary change of conduct was not sufficient to establish the plaintiff as a "prevailing party" under the Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. § 3601 et seq., and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12205.  The Court stated that "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change" to establish the plaintiff as a prevailing party.  Id.  But, as the Supreme Court later stated in Hardt, supra, fee shifting under ERISA is not governed by the "prevailing party" standard and instead only requires a litigant to show "some success on the merits." 130 S. Ct. at 2158.

At present, neither the Third Circuit nor any other circuit court of appeals has decided whether Buckhannon's rejection of the catalyst theory extends to the more permissive fee shifting provision in ERISA. At the district level, courts that have squarely addressed the question have expressed doubt about the catalyst theory's place in ERISA litigation after Buckhannon and Hardt but have generally assumed the theory's continuing viability. See, e.g., Kenseth v. Dean Health Plan, Inc., 784 F. Supp. 2d 1081, 1095 (W.D. Wis. 2011); Feldman's Med. Ctr. Pharm., Inc. v. Carefirst, Inc., No. 10-254, 2012 U.S. Dist. LEXIS 141667 (D. Md. Sept. 28, 2012). But see Scarangella v. Group Health, Inc., No. 10-254, 2012 U.S. Dist. LEXIS 92433 ("[T]he catalyst doctrine does not apply to attorneys' fee applications under ERISA.").

After a close review of the case law, the Court concludes that ERISA does not permit fee shifting under the catalyst theory. In Hardt, supra, the Supreme Court held that in order to win attorneys' fees, "a fees claimant must show some degree of success *on the merits.*" 130 S. Ct. at 2158 (emphasis added). The Supreme Court's requirement that plaintiffs show some success "on the merits" seems to presume, at a minimum, that this success be *before the court.* Such an interpretation is also supported by the Supreme Court's admonition that the "some success on the merits" standard is not satisfied by "trivial success on the merits or a purely procedural victory." Id. Moreover, in Ruckelshaus v. Sierra Club, the Supreme Court stated that the "some degree of success" standard "was meant to expand the class of parties eligible for fee awards from prevailing parties to partially prevailing parties – parties achieving some success, even if not major success." 463 U.S. 680, 688 (1983). Another district court to address this issue has correctly reasoned that the "some degree of success" standard "is more lenient with respect to *how much* a party must prevail" but that "it is difficult to see why it would change the *type* of

18

result that qualifies as success, that is, whether the plaintiff achieves relief through a court order

or voluntary cessation of conduct."  <u>Kenseth</u>, <u>supra</u>, 784 F. Supp. 2d at 1095 (emphasis in

original).  This Court is persuaded that where the only success counsel can point to is outside the

courtroom, there has not been even partial success "on the merits," <u>Hardt</u>, 130 S. Ct. at 2158, and

there can be no fee shifting under § 1132(g)(1).

## III.   CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion for summary

judgment and deny Plaintiff's motions for class certification, summary judgment, and attorneys'

fees.  An appropriate form of order will be filed together with this Opinion.


_____s/ Stanley R. Chesler_____

STANLEY R. CHESLER

United States District Judge


DATED: November 30, 2012